OPINION
{¶ 1} Appellant, Roger New, seeks review of his conviction and six year sentence for burglary, R.C. 2911.12, a felony of the second degree. The facts are as follows.[1]
 {¶ 2} On March 28, 2005, the Franklin County Grand Jury returned a two-count indictment, possession of criminal tools, but convicted of Count 1 of the indictment, burglary. The sentencing entry was filed on August 23, 2005. Appellant filed notice of appeal on September 12, 2005.
 {¶ 3} The burglary took place on March 18, 2005, at the home of Cheryl Agin. Agin, who is paralyzed and confined to a wheelchair, was present in her home when the burglary took place. She heard a car pull into her driveway. After moving to a window, she saw a car with one occupant backing from her driveway. At the same time, she heard a "forceful knock" at her door. Agin was not expecting visitors and was frightened by the loud banging on her door. She telephoned the 911 operator and advised that someone was trying to force entry into her home. (Tr. 40.)
 {¶ 4} The person at the front door then went to the rear of Agin's home, entered the attached enclosed porch, and tried to force entry through the back door. Agin next heard her garage door being opened. She looked and saw appellant inside with something in his hand. (Tr. 46-47.) Later, police officers found a garden knife on her enclosed back porch. Agin said the knife had not been there prior to the attempt to enter her back door.
 {¶ 5} Agin testified that she watched the burglar and was able to describe him to the police officers who responded to her 911 call. She saw the same man in the custody of the officers at the scene and made a positive identification of appellant both at the scene and in open court. (Tr. 44-52.)
 {¶ 6} The first officer to respond to Agin's telephone call was Franklin County Sheriff's Detective Harold Ramey. As Ramey arrived, his dispatcher advised that the suspect was still in Agin's back yard. As Ramey moved around the corner of the house, Ramey saw appellant. Ramey identified himself as a police officer. Appellant immediately fled on foot, discarding a brown glove during the chase.[2] He was apprehended nearby and returned to the scene of the burglary. When officers asked Agin if she recognized appellant, appellant refused to stand still and turned his face away from Agin. (Tr. 118.) At the scene of the burglary, investigators recovered a brown glove that matched the one discarded by appellant as he fled police, and a "walkie-talkie."
 {¶ 7} Appellant raises five assignments of error:
FIRST ASSIGNMENT OF ERROR:
THE TRIAL COURT COMMITTED PLAIN ERROR UNDER CRIMINAL RULE 52 (B) WHEN DEFINING THE ELEMENT "FORCE" AND USING THE WORD "EFFORT" TO DEFINE "FORCE", VIOLATIVE OF APPELLANT'S DUE PROCESS RIGHTS PROTECTED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I § TEN AND SIXTEEN OF THE OHIO CONSTITUTION, AND REVISED CODE § 2901.01(A)(1).
SECOND ASSIGNMENT OF ERROR:
THE VERDICT OF GUILT TO THE CHARGE OF BURGLARY WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
THIRD ASSIGNMENT OF ERROR:
THE EVIDENCE RELIED UPON BY THE JURY AND SUBMITTED BY THE PROSECUTION TO PROVE BURGLARY WAS CIRCUMSTANTIAL EVIDENCE ALONE AND WAS JUST AS CONSISTENT WITH GUILT AS WITH INNOCENCE WHICH, BASING ONE INFERENCE UPON ANOTHER INFERENCE TO FIND GUILT, NOT BASED UPON ANY FACT BUT SPECULATION ALONE, THERE MUST BE A REASONABLE DOUBT AND SUCH A CONVICTION DEVOID OF EVIDENTIARY SUPPORT IS VIOLATIVE OF APPELLANT'S RIGHT OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
FOURTH ASSIGNMENT OF ERROR:
TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO THE APPELLANT IN VIOLATION OF APPELLANT'S SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE I § TEN AND SIXTEEN OF THE OHIO CONSTITUTION, BECAUSE TRIAL COUNSEL FELL BELOW THE REASONABLE STANDARDS OF EFFECTIVE ASSISTANCE.
FIFTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN DENYING APPELLANT STAND-BY COUNSEL TO ASSIST APPELLANT THROUGH COURT PROCEEDINGS, DENYING APPELLANT NEW COUNSEL WITH A REASONABLE CONTINUANCE AND DENYING TRIAL COUNSEL TO WITHDRAW, VIOLATING THE RIGHTS OF THE APPELLANT TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL PROTECTED UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 {¶ 8} In his first assignment of error, appellant asserts that the trial court gave erroneous instructions to the jury. Specifically, appellant now objects to the instruction defining "force" in the charge of burglary. We note that appellant did not object to the jury instructions. Therefore, pursuant to Crim.R. 30, appellant has waived any complaint regarding the instructions unless appellant can demonstrate that the trial court committed plain error under Crim.R. 52(B).
 {¶ 9} The standard for considering plain error is set out in paragraph three of the syllabus of State v. Long (1978),53 Ohio St.2d 91. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Error in a jury instruction does not constitute plain error unless, but for the error, "the outcome of the trial clearly would have been otherwise." Id. at paragraph two of the syllabus.
 {¶ 10} Jury instructions must be viewed as a whole; not in isolation. State v. Price (1979), 60 Ohio St.2d 136. Force is defined in R.C. 2901.01(A) as follows: "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In this case, the trial court explained to the jury that force "means any violence, compulsion, effort or constraint exerted or used by any means upon or against a person or thing to gain entrance." (Tr. 192.) The instruction gave the essence of the definition of force. This court has held that the use of the word "effort" in addition to the normal definitional terms is not error. State v. Lane
(1976), 50 Ohio App.2d 41.[3] As in Lane, the instruction given by the trial court correctly conveyed the concept of force necessary to commit burglary. Even if the instruction were error, it cannot be said that the instruction given rises to the level of plain error. See Long, supra. The first assignment of error is overruled.
 {¶ 11} In his second assignment of error, appellant argues that the verdict is against the manifest weight of the evidence. Although not directly raised in the second assignment of error and, therefore, not properly before the court, appellant also questions the sufficiency of the evidence presented at his trial.
 {¶ 12} The legal concepts of sufficiency and weight of the evidence are quantitatively and qualitatively different. The question of whether sufficient evidence exists is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387. Evidence is sufficient to support a verdict where the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The following portion of the second paragraph of the syllabus in State v. Jenks (1991),61 Ohio St.3d 259, explains the standard: "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781 * * * followed.)" Applying this standard, we find that the evidence is sufficient to support the verdict. The victim identified appellant as the burglar who broke into her attached garage. Evidence to support each element of the crime of burglary was present. When both the direct and circumstantial evidence is considered, a rational trier of fact could find the defendant guilty of burglary beyond a reasonable doubt.
 {¶ 13} We turn next to appellant's assertion that the verdict is against the manifest weight of the evidence. In reviewing a claim that a verdict is against the manifest weight of the evidence, the reviewing court sits as a "thirteenth juror." The court reviews the entire record, weighs the evidence, considers the credibility of the witnesses to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, supra, at 387.
 {¶ 14} Having conducted the required review, we find that the verdict of the jury is not against the manifest weight of the evidence. There appears to be no reason to question the credibility of the state's witnesses. The victim identified appellant as the person who entered her attached garage through what had been a closed door. The victim observed the defendant after entry had been gained. Therefore, the element of trespass by force was proved. The premises in which the trespass took place was the home of the victim, by definition, an occupied structure and the victim was present at the time. The only remaining element to consider was whether the state proved that appellant entered the home with the intent to commit a theft offense or some felony.
 {¶ 15} Where a person forces entry into a structure, it is reasonable to infer that he did so with the intent to commit a theft offense, in the absence of circumstances giving rise to a different inference. State v. Levingston (1995),106 Ohio App.3d 433, 436; State v. Galloway, Franklin App. No. 03AP-407, 2004-Ohio-557. See, also, State v. Flowers (1984),16 Ohio App.3d 313. A trier of fact is not required to accept a competing inference of innocence if the same circumstances could also permit it to infer guilt beyond a reasonable doubt. Jenks,
supra. It was within the province of the jury to consider all of the evidence and infer that appellant broke into the occupied structure with the intent to commit a theft offense. Additionally, when confronted by police at the scene of the burglary, appellant fled and discarded evidence. After being captured, appellant attempted to prevent the victim from identifying him at the scene. These acts demonstrate appellant's consciousness of his guilt and are evidence of his guilt. Appellant's weight and sufficiency arguments are rejected and the second assignment of error is overruled.
 {¶ 16} In his third assignment of error, appellant argues that the circumstantial evidence in his case was as consistent with innocence as it was with guilt. Appellant relies on Statev. Kulig (1974), 37 Ohio St.2d 157. Appellant's reliance uponKulig is misplaced. Kulig was overruled by Jenks. The first paragraph of the syllabus in Jenks provides as follows:
Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged,there is no need for such evidence to be irreconcilable with anyreasonable theory of innocence in order to support a conviction.
Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required. (Holland v.United States [1954], 348 U.S. 121, 75 S.Ct. 127 * * * followed; Statev. Kulig [1974], 37 Ohio St. 2d 157 * * * overruled.)
(Emphasis added.) Therefore, appellant's Kulig argument is without merit. It was up to the jury to determine whether the evidence, both direct and circumstantial, proved guilt beyond a reasonable doubt.
 {¶ 17} Appellant next argues that the state's case was based upon inferences drawn from other inferences. Again, appellant is mistaken. The testimony of the several eyewitnesses was a combination of direct and circumstantial evidence from which the trier of fact is permitted to draw reasonable inferences. Appellant tried to break into the victim's home through the front and rear doors before gaining entry through a closed door in a garage attached to and accessible from the home. The victim observed appellant after he had broken into the attached garage. When confronted, appellant fled from police. Multiple inferences may be drawn from the evidence presented. The state's case did not rely upon inferences drawn from other inferences. The third assignment of error is overruled.
 {¶ 18} The fourth assignment of error raises a claim that appellant's trial counsel was ineffective under theSixth Amendment. A duly licensed attorney is presumed competent for purposes of Sixth Amendment analysis. A defendant who raises a claim that his counsel was ineffective bears the burden to overcome that presumption. To succeed on a claim of ineffective assistance of counsel, the accused must demonstrate that counsel made errors of such magnitude that counsel's performance was outside the wide range of professional competence and that counsel's errors resulted in actual prejudice to the accused.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052.Strickland provides the standard for review of an ineffectiveness claim under the Ohio Constitution. State v.Brooks (1986), 25 Ohio St.3d 144.
 {¶ 19} Appellant claims his counsel was ineffective in several aspects. First, in his brief, appellant lists several witnesses he now says he wished to call. Appellant says that these witnesses would have testified that they drove him from one place to another and that he was put out of a car in the victim's driveway. Appellant proffers that his mother would have testified that he lived with her and all of his needs were met. Finally, appellant proposes that his parole officer should have been called to testify that he was in compliance with his parole for a prior felony conviction. None of this proposed information is part of the record on appeal. The transcript of the proceedings contains only general comments by appellant that he was without witnesses. (Tr. 4, 7.) Appellant did not advise the court that he wanted specific witnesses to be called or what testimony those witnesses would provide. Hence, there is nothing in the record on appeal to support appellant's assertions about proposed witnesses or what their testimony might have been.[4]
 {¶ 20} The fact that appellant wrote to disciplinary counsel complaining about his appointed attorney is of no significance without knowing why appellant complained. Appellant feels that his "displeasure" with trial counsel somehow proves that counsel was ineffective. However, "[t]he Sixth Amendment does not guarantee `rapport' or a `meaningful relationship' between an accused and his counsel." State v. Henness (1997),79 Ohio St.3d 53, at 65, citing Morris v. Slappy (1983), 461 U.S. 1,13-14, 103 S.Ct. 1610.
 {¶ 21} Appellant complains that his attorney failed to file a motion to suppress the walkie-talkie or the garden tool/knife found at the scene. Appellant states that he was never in possession of the objects and both the walkie-talkie and the garden tool should have been suppressed. Appellant confuses the issue of what weight is to be given to evidence with the concept of exclusion of evidence where there has been a violation of theFourth Amendment right to be free from unreasonable searches and seizures. To have standing to object to searches and seizures of property, a person must have a reasonable expectation of privacy in the area searched. Appellant had no reasonable expectation of privacy in the home he had burglarized, or in the backyard, or adjacent fields. Therefore, appellant lacked standing under theFourth Amendment to object to the seizure of the evidence. Additionally, appellant abandoned one of the gloves while running from the police. A defendant has no standing to object to the seizure of property that he has voluntarily abandoned. State v.Freeman (1980), 64 Ohio St.2d 291, paragraph two of the syllabus. It is apparent that there was no basis to file a motion to suppress. Counsel could not be ineffective in failing to file a baseless, spurious motion to suppress evidence.
 {¶ 22} Appellant suggests that his attorney did not present a reasonable theory of innocence to the charge of burglary or raise a reasonable doubt of guilt. Appellant complains that his attorney failed to present witnesses to show that it was not appellant's intent to commit a burglary, but that he "was only seeking help to call his Mother to come and pick him up." (Appellant's brief, at 18.)
 {¶ 23} As noted above, in the absence of a record to support these statements, we are unable to ascertain what witnesses appellant would have called and how their testimony would have been admissible on the subject of appellant's intent in entering the victim's home. Because "the intent of an accused person is only in his mind and is not ascertainable by another, it cannot be proved by direct testimony of another person but must be determined from the surrounding facts and circumstances." Statev. Huffman (1936), 131 Ohio St. 27, as quoted in State v.Rivers, Cuyahoga App. No. 83321, 2004-Ohio-2566. Witnesses cannot know what is in another person's mind. Therefore, witnesses cannot venture opinions on the intent of another person in doing an act. Witnesses may only testify to the facts they observed. Here, the defendant had the option of testifying as to his intent in breaking into the victim's home. He elected not to do so and rely on his Fifth Amendment privilege against self-incrimination.[5] We cannot say that counsel was ineffective in not calling witnesses who would not have been permitted to offer testimony as to what appellant was thinking at the time.
 {¶ 24} Here, counsel was faced with the fact that appellant made two abortive attempts to gain entry to the victim's home before successfully breaking into the dwelling. The victim watched him during the burglary. When confronted by police, appellant did not offer an explanation of his presence, but fled, discarding one of two matching brown gloves in the process. When captured, he attempted to hide his face from the eyewitness. "It is to-day universally conceded that the fact of an accused's flight * * * resistance to arrest, [and] concealment * * * are admissible as evidence of consciousness of guilt, and thus of guilt itself." State v. Eaton (1969), 19 Ohio St.2d 145, 160.
 {¶ 25} Despite these difficult facts, defense counsel cross-examined the witnesses, questioned whether the eyewitness accurately identified appellant, pointed out that there was no fingerprint evidence linking appellant to the walkie-talkie or any other place at the crime scene and vigorously argued that appellant was not the person who entered the victim's home. In fact, counsel successfully obtained a not guilty verdict on the charge of possession of criminal tools. The record does not support appellant's claim that his attorney was ineffective. The fourth assignment of error is overruled.
 {¶ 26} In his fifth and final assignment of error, appellant claims the trial court should have appointed new counsel for him, or "standby counsel" to assist him during the proceedings, denied new counsel a continuance and denied trial counsel's request to withdraw from the case. None of these arguments have merit.
 {¶ 27} First, appellant had competent counsel. The fact that appointed counsel and a client may disagree, or that there is hostility between them, is not grounds for interferes with the preparation or presentation of a legitimate defense. The record on appeal does not support such a finding. Second, although appellant claims that he had a new attorney who requested a continuance of the trial, appellant's claim is not born out by the record. Instead, on the day of trial, as the jury was being brought into the courtroom, appellant suddenly announced that he wanted a new attorney because "[m]y family is going to hire
Sallynda Rothchild Dennison to my case." (Tr. 3.) (Emphasis added.) Appellant did not have new counsel at the time the trial was scheduled to begin and no counsel had requested a continuance of trial. (Tr. 5.) Third, the record does not support appellant's claim that appointed trial counsel made a request to withdraw. Counsel did not request leave to withdraw. Only after the subject of self-representation arose did counsel offer to sit as standby counsel if needed. (Tr. 16.) Finally, when appellant broached the subject of proceeding without counsel, the trial court engaged him in a dialogue on the subject. That dialogue made clear that appellant had no knowledge of procedure, evidentiary rules, how to conduct a defense or proceed with trial. After the trial court explained that there was no basis to remove appointed trial counsel and after the trial court explained the pitfalls of self-representation, appellant ended the subject by stating that he would proceed with counsel. (Tr. 16-17.) The fifth assignment of error is overruled.
 {¶ 28} Having overruled each of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt, P.J., and McGrath, J., concur.
[1] A statement of the facts must contain references to the place in the record on appeal where those facts may be found. It is inappropriate to claim as fact matters that are not contained in the record. Appellant's four-page statement of the facts contains no references to the transcript of proceedings or other parts of the record on appeal. Additionally, appellant appears to have stated as fact information that clearly is not part of the record on appeal. Therefore, the facts herein are gleaned from the brief of appellee and the court's review of the record.
[2] The brown glove matched another brown glove found at the scene.
[3] The instruction in Lane advised the jury that: "By force means any effort physically exerted by any person to gain an entrance into a residence."
[4] Moreover, considering the fact that appellant was seen inside the victim's home, fled from the crime scene upon being confronted by a police officer and attempted to thwart an on-scene identification by the victim, the proposed testimony would seem to have little value to the defense. This is particularly true in the case of the proposed testimony of appellant's parole officer. By calling a parole officer, the fact of appellant's criminal conviction that was subject of the parole proceedings would be placed before the jury; information not available to the jury if the parole officer is not called.
[5] Counsel may have advised appellant not to testify because if he had done so, he would have subjected himself to cross-examination about his prior criminal record.