[Cite as *State v. Sines-Riley*, 2024-Ohio-2860.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. 22CA3984 |
| | | 22CA3985 |
| v. | : | 22CA3986 |
| NOAH S. SINES-RILEY, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | **RELEASED 7/24/2024** |

_____
APPEARANCES:

Brian T. Goldberg, Schuh & Goldberg, Cincinnati, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Matthew F. Loesch, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____
HESS, J.

{¶1}    Noah S. Sines-Riley appeals his conviction for theft, vandalism, breaking and entering, and possession of criminal tools for breaking into the Scioto County Fairgrounds and stealing catalytic converters from the RVs stored there and for breaking into a local business storage yard and stealing five catalytic converters from the trucks. He contends that the State failed to prove that the catalytic converters he stole had a fair market value of $1,000 or more, which is the level at which a misdemeanor theft rises to a fifth-degree felony. He also argues that the trial court did not give the proper jury instructions on value for purposes of determining whether the property he stole was valued at $1,000 or more. We agree in part with these two arguments and sustain in part these two assignments of error.

{¶2}    He also argues that the trial court failed to merge allied offenses of similar import. Again, we agree, in part, with some of his merger argument and find that the trial

court erred when it failed to merge his vandalism offense with the theft offense as it relates to the vandalism of the trucks and the thefts of the catalytic converters off the trucks at the local business's storage yard. We sustain in part and overrule in part this assignment of error.

{¶3}    Because we vacate four of his convictions and remand for resentencing, his assignments of error raising sentencing errors are moot and we overrule them. For example, he challenges the trial court's consecutive sentences, but with new sentences on four of the counts, the court may decide to modify the consecutive nature of some of those sentences. Likewise, at a de novo hearing the trial court will have an opportunity to give the required sentencing notifications. Therefore, any challenge that this was not done at the previous hearing is moot.  However, his challenge to the constitutionality of the Reagan Tokes Act is not rendered moot. We overrule that assignment of error and find the Reagan Tokes Act constitutional.

{¶4}    We vacate in part and affirm in part the trial court's judgment. We remand for a new sentencing hearing. Upon remand the trial court should: (1) hold a de novo sentencing hearing; (2) enter a conviction for petty theft on the two felony theft convictions; (3) resentence on those two convictions; (4) merge the vandalism and theft offenses; (5) resentence on the merged offense; and (6) provide any required sentencing notices.

## I. FACTS AND PROCEDURAL HISTORY

{¶5}    In June and July 2021, a Scioto County Grand Jury issued 4 indictments against Sines-Riley involving 47 counts, including theft, breaking and entering, possessing criminal tools, vandalism, drug possession, and trafficking in drugs. Sines-Riley pleaded not guilty to all charges. One of the indictments was dismissed and the remaining three indictments were consolidated for trial. The State dismissed some counts, the trial court

granted Sines-Riley's Crim.R. 29 motion for directed verdict thereby dismissing some counts, and the jury reached a not guilty verdict on some counts. The jury found Sines-Riley guilty of the remaining 27 counts.

{¶6}    At trial Sines-Riley's codefendant, Todd Parsons, testified that he entered into a plea agreement in exchange for his testimony. Parsons testified that on the day in question he and Sines-Riley jointly possessed and consumed methamphetamines and fentanyl and were driving around southern Ohio when they were stopped by law enforcement. Parsons was speeding on the wrong side of State Route 23 in Scioto County. During the stop, law enforcement discovered nine catalytic converters that Parsons and Sines-Riley had stolen from trucks parked at Arrick's Propane and from recreational vehicles parked at the Scioto County Fairgrounds. Although both Parsons and Sines-Riley resided two counties away in Ross County, Ohio, Sines-Riley came up with the idea to travel to the Scioto County Fairgrounds to steal catalytic converters off the RVs parked there because they had more expensive catalytic converters and would have a higher resale value. Parsons testified that they were attracted to Arrick's Propane because the trucks used by the business also had more expensive catalytic converters. Parsons and Sines-Rile dressed in coveralls, cut a hole in the fence surrounding Arrick's Propone, and used reciprocating saws to cut five catalytic converters off the trucks.

{¶7}    Before they arrived at Arrick's Propane, they had already broken into and stolen equipment at the Scioto County Fairgrounds. Parsons testified that he went to Scioto County earlier and bought saw blades at a business located next to the fairgrounds. Both he and Sines-Riley went down to the fairgrounds prior to breaking into it, scoped it out during the daylight, and could see that the RVs stored there likely would have the type of catalytic

converters they wanted to steal. Parsons testified that they cut a hole in the fence around the fairgrounds, crawled through, went to the RV storage area, and each of them cut a catalytic converter off an RV. Parsons testified that Sines-Riley stole other items from the RVs and put them in the car. As they were driving away from the fairgrounds, Sines-Riley spotted the trucks at Arrick's Propane and suggested that they turn around and go back to Arrick's. They stole five catalytic converters, along with some copper wire, from Arrick's and loaded them into the car next to the ones they had stolen from the fairgrounds.

{¶8}   Parsons testified that after they were stopped by law enforcement for speeding on the wrong side of the road, they were placed in the backseat of the patrol car where they discussed trying to get a story straight to tell the officers about what they were doing in Scioto County. Parsons testified that he and Sines-Riley had planned to split equally the money from the sale of the stolen catalytic converters and buy more drugs. Parsons had previously told law enforcement he could get anywhere from $400 to $800 for a catalytic converter. In the recording made by law enforcement during the traffic stop, one of the officers asked Parsons what he could get for a catalytic converter:

> Sergeant Stuart: (Inaudible) these converters, because what are you getting for a converter, 100 buck a pop, 50 buck a pop?
>
> Mr. Parsons: I don't know.
>
> Sergeant Stuart: What are you getting for them?
>
> Mr. Parsons: Can I - - can I show you?
>
> Sergeant Stuart: No just tell me. You got the big one. You got the little ones.
>
> Mr. Parsons: The big ones you get like 800 bucks.
>
> Sergeant Stuart: Really?
>
> Mr. Parsons: Yeah.

Mr. Sines-Riley: It all depends.

Mr. Parsons: It all depends which ones they are really. Five - - four or five hundred bucks.

**{¶9}** An employee from Arrick's Propane testified that five catalytic converters were stolen from the trucks and the "total value or replacement cost of these catalytic converters" was more than $1,000. The employee also testified that some copper tubing and brass were stolen but no testimony was given as to the value of those items.

**{¶10}** Sheriff Deputy Matt Frantz testified that he had experience investigating thefts of catalytic converters and when asked "Would a total theft of five of them be more than $1,000 in value?" he responded that it would. The deputy testified that he did not know the value of each of the specific catalytic converters, but he knew that they each came off of large trucks. For five of them to amount to $1,000, it would mean that each would only be $200 and in his experience you cannot "buy a large catalytic converter for $200.00."

**{¶11}** Detective Kirk Jackson testified that he searched the car Sines-Riley was riding in and found a small television, a tool bag with tools, a reciprocating saw, overalls, brass fittings, copper tubing, and nine catalytic converters in the vehicle. He testified that five catalytic converters would "have a value in excess of $1,000." Detective Jackson agreed that "each of those converter thefts was * * * well over $1,000 in damages to the victim." When asked on cross examination about how he can determine the value of a catalytic converter for "a vehicle that you don't know about," Detective Jackson responded, "I could say that an RV catalytic converter generally runs in the thousands, based upon my experience with dealing with these types of thefts."

**{¶12}** Barbara Dunham testified that she stored her 37-foot motor home at the

fairgrounds and the catalytic converter was cut off the bottom of it and stolen. There was also evidence that someone attempted to gain entrance to the home through the door but was unsuccessful. The only thing stolen was the catalytic converter and the "repair cost" was $3,000. Dunham clarified that the "repair cost" consisted of $1,000 for the repair to the door and $2,000 for the catalytic converter repair. Dunham did not break down total repair costs into labor costs and material costs. She also testified that she came up with the $2000 catalytic converter total repair costs from her son, "My son told me." When the prosecution asked Dunham whether her son had knowledge or expertise on this, the defense objected and the trial court sustained the objection with an admonishment, "Sustained. I'm more interest in her - - her personal knowledge about the value of the damages, Mr. Evans." The State then asked Dunham:

> Q. Okay. Did you make any other additional inquiries as to valuation on damages or loss?
>
> A. No.

{¶13} Robert Days testified that he stored his 32-foot motor home at the fairgrounds and the catalytic converter was stolen off it, the back panel door was pried open, and tools were stolen out of his toolbox. Days testified that the insurance company sent him a check for $1,300 for the damages to his back panel door and the catalytic converter. However, when he recovered the catalytic converter from the fairgrounds personnel working in conjunction with law enforcement, he notified the insurance company and the insurance company deducted $800 from the $1,300 payment and only paid him approximately $320 to repair the damages to his back panel door and for the labor costs to reinstall the catalytic converter. Days testified he used the insurance money to pay a muffler shop to repair his RV and the total costs of the repairs exceeded $1,000.

{¶14} Other witnesses testified that they stored campers at the fairgrounds and suffered damages and theft. Some of the witnesses testified that they had nothing stolen, only property damage. Some of the witnesses that testified did not have an estimate of the costs of the damages. Abby Floyd testified that she had a hitch and extension cord stolen and "the value of the items stolen from" her was approximately $3,000. Brent Koenig testified that he had a power cord and extension cord stolen and damage to his camper door lock. His "total costs for replacement and repairs" was $550. Zane Chamberlin testified that he had property damage, but nothing stolen. The "price to repair the damage" was more than $100 but less than $200. Hunter Armstrong testified that he had miscellaneous tools and some electrical cords stolen and damage to locks to his doors. The "total value of items stolen" was approximately $500 to $600 and "the amount of damage to the camper" was approximately $200 to $300. Tim Wheeler testified that he had an extension cord stolen and damages to a compartment lock. "The value of" the extension cord was $75 to $100 and "the costs to repair" the door lock assembly was "$50 for the – for the parts."

{¶15} An employee with the Ohio State Highway Patrol Crime Lab testified that he tested substances found in Parsons and Sines-Riley's vehicle. The substances tested positive for 4.83 grams of methamphetamine and 10.57 grams of fentanyl, both Schedule II substances.

{¶16} The jury convicted Sines-Riley of several of the drug charges, the charges involving theft, vandalism, and breaking and entering at Arrick's Propane, and several of the charges of theft, petty theft, breaking and entering, possessing criminal tools, and criminal damaging or endangering at the Scioto County Fairgrounds. The trial court sentenced him to a total indefinite prison term of 16 years to 19 years.

**{¶17}** Sines-Riley appealed. His appeal challenges 6 of the 27 counts on which he was convicted:

> (1) Count 3 in Case No. 21CR342 (Arrick's Propane) – Breaking and Entering in violation of R.C. 2911.13(B); R.C. 2911.13(C), a fifth-degree felony;
>
> (2) Count 1 in Case No. 21CR401 (Scioto County Fairgrounds) – Breaking and Entering in violation of R.C. 2911.13(B); R.C. 2911.13(C), a fifth-degree felony;
>
> (3) Count 14 in Case No. 21CR401 (Scioto County Fairgrounds) – Theft from Barbara Dunham in violation of R.C. 2913.02(A)(1); R.C. 2913.02(B)(2), a fifth-degree felony;
>
> (4) Count 15 in Case No. 21CR401 (Scioto County Fairgrounds) – Theft from Robert Days in violation of R.C. 2913.02(A)(1); R.C. 2913.02(B)(2), a fifth-degree felony;
>
> (5) Count 13 in Case No. 21CR401 (Scioto County Fairgrounds) – Possessing Criminal Tools in violation of R.C. 2923.24(A); R.C. 2923.24(C).
>
> (6) Count 1 in Case No. 21CR342 (Arrick's Propane) – Theft in violation of R.C. 2913.02(A)(1); R.C. 2913.02(B)(2), a fifth-degree felony.[1]

Sines-Riley also challenges four aspects related to sentencing: (1) the trial court's merger analysis of the breaking and entering, vandalism, and theft offenses; (2) his consecutive prison terms; (3) the constitutionality of the Reagan Tokes Act; and (4) the trial court's noncompliance with certain sentencing notice requirements.

## II. ASSIGNMENTS OF ERROR

**{¶18}** Sines-Riley assigns six errors for review:

> I. The trial court committed plain error by not providing a jury instruction on how to determine value of the stolen property.

---

[1] Sines-Riley challenges the felony theft charge in Count 16, Case No. 21CR401, which alleged theft from Abby Floyd. However, the jury found him not guilty of Count 16. Because his first assignment of error challenges "all felony thefts," we construe this as including the theft of catalytic converters from Arrick's Propane even though the brief contains an incorrect reference to the theft for which he was acquitted.

II. Mr. Sines-Riley's convictions were not supported by sufficient evidence and are contrary to the manifest weight of the evidence.

III. The trial court erred to the prejudice of Mr. Sines-Riley by failing to merge allied offenses of similar import at the time of sentencing.

IV. The trial court erred to the prejudice of Mr. Sines-Riley by improperly sentencing him to consecutive prison terms.

V. The Regan Tokes Act, as enacted by the Ohio Legislator [sic] is unconstitutional, and the trial court erred by sentencing Mr. Sines-Riley under that Act.

VI. The trial court erred to the prejudice of Mr. Sines-Riley by failing to comply with the sentencing requirements contained in R.C. 2929.19(B)(2)(c).

We address his second assignment of error first.

## III. LEGAL ANALYSIS

### A. Sufficiency of the Evidence and Manifest Weight of the Evidence

{¶19} Sines-Riley contends that the evidence in the case did not support his conviction for felony theft against Barbara Dunham and Robert Days (Counts 14 and 15 of Case No. 21CR401); breaking and entering against Arrick's Propane and the Scioto County Fairgrounds (Count 3 in Case No. 21CR342 and Count 1 in Case No. 21CA401, respectively); and possessing criminal tools (Count 13 in Case No. 21CR401). The element he challenges on each of these convictions is the value of the property stolen. He contends that the State must prove beyond a reasonable doubt that the property stolen has a fair market value of $1,000 or more. He argues that none of the witnesses gave any testimony establishing the fair market value of the property.

#### 1. Standard of Review

##### a. Sufficiency

**{¶20}** "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell*, 2014-Ohio-1019, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus; following *Jackson v. Virginia*, 443 U.S. 307 (1979); *State v. Bennington*, 2019-Ohio-4386, ¶ 11 (4th Dist.).

**{¶21}** An appellate court must construe the evidence in a "light most favorable to the prosecution." *State v. Hill,* 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). Further, "[t]he court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard,* 2014-Ohio-4974, ¶ 22 (4th Dist.), citing *State v. Kirkland*, 2014-Ohio-1966, ¶ 132; *State v. Lodwick*, 2018-Ohio-3710, ¶ 9 (4th Dist.). Thus, "a reviewing court is not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *State v. Davis*, 2013-Ohio-1504, ¶ 12 (4th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). Rather, a reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484 (2001).

### b. Manifest Weight

**{¶22}** In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage

of justice that reversal of the conviction is necessary. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To satisfy this test, the State must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt. *See State v. Eskridge*, 38 Ohio St.3d 56 (1988), syllabus; *State v. Harvey*, 2022-Ohio-2319, ¶ 24 (4th Dist.). Because a trier of fact sees and hears the witnesses, appellate courts will also afford substantial deference to a trier of fact's credibility determinations. *State v. Schroeder*, 2019-Ohio-4136, ¶ 61 (4th Dist.).

### 2. Elements of Theft under R.C. 2913.02

**{¶23}** The State is required to prove for a fifth-degree felony theft that the value of the property stolen is $1,000 or more but less than $7,500:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

\* \* \*

(B) Whoever violates this section is guilty of theft.

(2) * * * If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars * * * a violation of this section is theft, a felony of the fifth degree.

**{¶24}** In a theft offense, the value of the stolen property is defined under R.C. 2913.61(D), which provides:

(D) The following criteria shall be used in determining the value of property or services involved in a theft offense:

(1) The value of an heirloom, memento, collector's item, antique, museum piece, manuscript, document, record, or other thing that has intrinsic worth to its owner and that either is irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money, is the amount that would compensate the owner for its loss.

(2) The value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, which property is not covered under division (D)(1) of this section and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality.

(3) The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, and the value of services, is the fair market value of the property or services. As used in this section, "fair market value" is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act.

The value of the catalytic converters removed from the recreational vehicles owned by Barbara Dunham and Robert Days is governed by R.C. 2913.61(D)(3), the fair market value, which is the price a fully-informed willing buyer would pay and a fully-informed willing seller would accept. *State v. Chaney*, 11 Ohio St. 3d 208, 212 (1984) (battery and radiator removed from the owner's automobile are correctly valued under the fair market value test set forth in R.C. 2913.61(D)(3)); *State v. Hanke,* 2009-Ohio-3023, ¶ 11-13 (2d Dist.) (value of catalytic converter, emissions box, and muffler stolen from automobile should be measured by the fair market value set out in R.C. 2913.61(D)(3)); *State v. Burton,* 2007-Ohio-2320, ¶ 20 (4th Dist.) (the State is required to prove that the fair market value of the item stolen falls within the dollar range of the alleged offense, but it does not have to prove the exact fair market value).

**{¶25}** Where the State offers evidence of the insurance company's payment for the cost of replacing the stolen property it fails to meet its burden to prove fair market value. "The cost of replacing the stolen property does not demonstrate what a willing buyer would give and a willing seller would take for it." *Hanke*, 2009-Ohio-3023, ¶ 13 (finding that the State failed to present sufficient evidence of the fair market value of a stolen catalytic converter

where it presented the owner's testimony of the dollar amount the insurance company paid him ($600) to purchase a new replacement catalytic converter). However, testimony about the scrap value on the street of a catalytic converter is probative of its fair market value. *Id.* (finding that the detective's testimony of the street scrap value probative but, because the amount was less than the felony threshold, the conviction and sentence for felony theft of the catalytic converter was reversed and remanded for the purpose of entering a conviction for petty theft and resentencing); *see also State v. Griffin,* 2009-Ohio-2482, ¶ 13 (1st Dist.) (State failed to present evidence of "fair market value" of a stolen global-positioning system, felony theft reduced to petty theft and a six-month sentence imposed); *State v. Donaldson*, 1984 WL 7174, *3  (8th Dist. Feb. 2, 1984) (conviction for grand theft for stolen tires reduced to petty theft and remanded for resentencing because State failed to prove fair market value of stolen tires, "there was absolutely no testimony presented as to the fair market value of any of the stolen items").

{¶26}  The State failed to provide any evidence of the fair market value of the catalytic converters stolen from the RVs at the Scioto County Fairgrounds. Barbara Dunham, the owner of one of the stolen catalytic converters, testified that the total repair costs for the catalytic converter was $2,000. However, the costs of repairing or replacing the stolen property "does not demonstrate what a willing buyer would give and a willing seller would take for it." *Hanke* at ¶ 13.

{¶27} Similarly, Robert Days, the owner of the other stolen catalytic converter, testified that the insurance company sent him a check for $1,300 for damages to both his RV's back panel door and the catalytic converter. When the insurance company learned that he recovered the catalytic converter, the company deducted $800 from the check and paid

him $320 for repairs to his back panel door and labor to reinstall the catalytic converter. He testified that his total repair costs for the RV were greater than $1,000. Again, the State provided only evidence of total repair costs to the RV (which included labor costs and cost to repair the damage to the door), not the fair market value of the stolen catalytic converter.

**{¶28}** Arguably some evidence of fair market value was produced in the recorded verbal exchange between law enforcement, Parsons, and Sines-Riley during the traffic stop. The officer asked what they are "getting for a converter" and guessed it might be $50 to $100 per converter. Parsons and Sines-Riley both indicted that "it all depends" and Parsons stated they could "get" $400 to $800.  However, this evidence places the fair market value of a used catalytic converter below the $1,000 value that R.C. 2913.02(B)(2) establishes as a basis to increase a misdemeanor theft offense to a fifth-degree felony.

**{¶29}** The State does not respond to Sines-Riley's argument that the proper "value" of the catalytic converters is "fair market value." Rather, the State uses the term "value" and argues that "the value of the stolen items was testified to at length by the victims" and by law enforcement. While this is true – many witnesses testified about "value" – not one was asked about or testified to the "fair market value." The State argues that Detective Jackson testified that RV catalytic converters "are valued in the thousands of dollars." However, Detective Jackson's testimony and his use of the vague term "value" is not proof of the "fair market value" of a used catalytic converter. He testified vaguely about "value." Detective Jackson testified he did not know the types or models of the vehicles at the fairgrounds, but generally knew they were RVs. He was asked, "so you cannot personally, yourself, state a value for a converter that you have no idea goes on a vehicle that you don't know about?" to which he responded, "I could say that an RV catalytic converter generally runs in the thousands."

Detective Jackson is not asked and does not testify whether this "generally runs" figure is the amount it "generally runs" to replace or repair the catalytic converter (which includes labor costs), if it is the fair market value for a new catalytic converter, or whether this is the scrap value of it on the used market, which would be "probative of its fair market value for purposes of R.C. 2913.61(D)(3)." *Hanke* at ¶ 13 (detective testified that "on the street the 'scrap value'" for a used catalytic converter "can be as much as one hundred and fifty dollars"); *State v. Skinner*, 2008-Ohio-6822, ¶ 2 (10th Dist.) (used automobile parts dealer testified that a box of 100 used catalytic converters could be sold to a recycler for between $5,000 and $11,000, making each one worth $50 to $110)

**{¶30}** Construing the evidence in a light most favorable to the prosecution, the State's evidence does not support a felony theft conviction on these two counts. Reasonable minds could not reach the jury's conclusion as to the fair market value of the stolen property. Sines-Riley's assignment of error is sustained as it relates to his claim of insufficient evidence for his felony theft convictions under Counts 14 and 15 in Case No. 21CR401 (Dunham and Days thefts). His conviction and sentence for felony theft on those two counts will be reversed and vacated and this cause remanded to the trial court for the purposes of entering a conviction for petty theft and resentencing.

**{¶31}** Because we conclude that there was insufficient evidence for these two felony theft convictions, any manifest weight of the evidence argument for these two counts is moot and we need not review it. App.R. 12.

### 3. Elements of Breaking and Entering under R.C. 2911.13(B) and (C)

**{¶32}** The State must prove the elements of breaking and entering:

(B) No person shall trespass on the land or premises of another, with purpose to commit a felony.

(C) Whoever violates this section is guilty of breaking and entering, a felony of the fifth degree.

**{¶33}** Sines-Riley challenges the "purpose to commit felony" element of this crime. He argues that "the breaking and entering convictions against Arrrick's Propane and the Fairgrounds must be reversed, as the State of Ohio has not proven trespass with intent to commit because they have not established a fair market value of the stolen items." However, the breaking and entering statute does not require the State to prove that Sines-Riley successfully committed felony theft, only that he trespassed "with purpose to commit" felony theft. *State v. Morris*, 2005-Ohio-962, ¶ 20 (4th Dist.) (for a burglary conviction the State need not present evidence that any items inside the home were stolen; the homeowner had interrupted defendant); *State v. Sutton*, 2014-Ohio-1074, ¶ 36-37 (8th Dist.) ("the state was not required to show that he actually stole something in order to convict him of breaking and entering"); *State v. Russell,* 2013-Ohio-3079, ¶37-38 (12th Dist.) (State was not required to prove that defendant stole the item found in his truck, "but instead, was merely required to show that Russell trespassed on an unoccupied structure with the purpose of committing theft"); *State v. Galloway*, 2004-Ohio-557, ¶ 25-26 (10th Dist.) (State presented sufficient evidence of breaking and entering when defendant climbed over a fenced area to gain access to a storage yard containing vans with valuable equipment even though defendant was unable to steal anything before the police arrived).

**{¶34}** The Supreme Court of Ohio has established the following standard of proof when "intent" is an element of the crime:

> "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the

surrounding facts and circumstances under proper instructions from the court." (Citations omitted.)

*In re Washington*, 81 Ohio St.3d 337, 340 (1998); *Morris* at ¶ 20 ("it is difficult to ascertain the intent of a person in forcibly entering an occupied structure if he is apprehended before he commits any overt act inside the premises" therefore "in such a situation, unless circumstances giving rise to a different inference are present, a reasonable inference arises that the person entered the structure with the intent to commit a theft offense"); *State v. New*, 2006-Ohio-2965, ¶ 15 (10th Dist.) ("Where a person forces entry into a structure, it is reasonable to infer that he did so with the intent to commit a theft offense, in the absence of circumstances giving rise to a different inference").

{¶35} Like Sines-Riley, in *State v. Sutton, supra*, Sutton appealed his conviction for breaking and entering. Sutton argued that the State failed to present sufficient evidence of the "intent" element of breaking and entering because there was no evidence he took anything from the home. The court rejected this, "the intent to commit theft can be inferred from the fact of forcible entry, absent circumstances giving rise to a different inference." *Sutton* at ¶ 36. The court found that Sutton had been frustrated by the fact that the only things of value in the home were a piano and an organ, both of which were too big for him to carry, but that this did not alter his intent:

> Unbeknownst to Sutton, the only items of value in the home were a piano and an organ, which were too large for a single person to carry. Sutton therefore left the home with nothing in his hands. The fact that Sutton's purpose may have been frustrated by the contents in the home, or lack thereof, does not alter his intent. The state was not required to show that he actually stole something in order to convict him of breaking and entering under R.C. 2911.13(A).

*State v. Sutton*, 2014-Ohio-1074, ¶ 37.

{¶36} Here the State presented evidence through Parsons that Sines-Riley planned

to break into the fairgrounds and steal catalytic converters from the RVs stored there. They cased the place during daylight hours, purchased tools to assist them with the task, and travelled two counties from their homes in Ross County to Scioto County with the intention of stealing as many catalytic converters as they could get away with. Parsons told law enforcement that they believed they could sell them for as much as $800, but at least $400 to $500 each. Not only did they steal at least two catalytic converters from the fairgrounds,[2] but Sines-Riley stole additional items including a television. According to the conversation between Parsons, Sines-Riley, and law enforcement, the combined fair market value of the two stolen catalytic converters taken from the fairgrounds was in the range of $800 ($400 x 2) to $1,600 ($800 x 2) – and when construed in a light most favorable to the prosecution, this evidence was sufficient for a jury to conclude that the felony threshold or more was stolen in total at the fairgrounds. Even if the combined fair market value of all of the stolen property at the fairgrounds was less than the felony threshold of $1000, the State nevertheless provided sufficient evidence of breaking and entering. The State is not required to prove that Sines-Riley was able to actually steal anything of value – only that his intent was to steal it.

{¶37} Similarly, Parsons testified that although they did not initially plan to steal catalytic converters from Arrick's Propane, when Parsons drove by the business Sines-Riley told Parsons that the trucks parked there looked like the right kind from which to steal catalytic converters. Parsons testified he agreed, turned the car around, and they broke into Arrick's Propane and stole five catalytic converters and some copper wire. Again, based on Parsons

---

[2] Sines-Riley and Parsons were caught with nine catalytic converters during the traffic stop. Five were from Arrick's Propane, three were reportedly from the fairgrounds, and one was from an unknown source. However, Parsons testified they only stole two from the fairgrounds and only two witnesses testified concerning the theft of catalytic converters at the fairgrounds. Thus, it is unclear from whom the remaining two catalytic converters were stolen.

estimates, the fair market value of the five Arrick's catalytic converters was $2,000 to $4,000. An Arrick's Propane employee testified that the "total value or replacement cost" of the five catalytic converters was more than $1,000. Thus, both the "fair market value" under R.C. 2913.61(D)(3) and "the cost of replacing the property with new property" under R.C. 2913.61(D)(2) were presented by the State. Regardless of which definition of value is used, the amount exceeds the $1,000 value that R.C. 2913.02(B)(2) establishes as a basis to increase a misdemeanor theft offense to a fifth-degree felony.

**{¶38}**  Again, as with the breaking and entering conviction at the fairgrounds, the State is not required to prove the theft of any catalytic converters at Arrick's Propane as part of the breaking and entering elements – only the intent. Thus, the value of the converters stolen is not relevant to our analysis. However, we note that Sines-Riley's argument assumes that "fair market value" is the proper measure of value for the Arrick's converters under R.C. 2913.61(D)(3) rather than "replacement value" under R.C. 2913.61(D)(2), which governs "materials, supplies, equipment, and fixtures used in * * * business * * * which retains substantial utility for its purpose regardless of age or condition * * * ."  The State does not argue that "replacement costs" under subsection (D)(2) rather than "fair market value" under subsection (D)(3) applies to the Arrick's Propane converters. Because neither party raises this issue and it is not relevant to our analysis, we do not need to determine which value under R.C. 2913.61(D) applies to the Arrick's Propane catalytic converters.[3] The value exceeds $1,000 under either definition. *Compare State v. Chaney, supra* and *State v. Hanke, supra* with *State v. Overholt*, 2003-Ohio-3500, ¶ 41 (9th Dist.) (parts stolen from an all-terrain

---

[3] While there was testimony that the catalytic converters were equipment used in business, there was no testimony whether a catalytic converter "retains substantial utility" regardless of "its age or condition." R.C. 2913.61(D)(2).

vehicle constituted materials, supplies, and equipment used in the avocation of its owner and therefore the "cost of replacement" valuation method under R.C. 2913.61(D)(2) was proper).

{¶39} Viewing all of the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence supporting Sines-Riley's conviction for breaking and entering. Sines-Riley does not make a separate manifest weight of the evidence argument but raises the same grounds for both the insufficiency and the manifest weight arguments. Upon reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and resolving conflicts in the evidence, we find that the trier of fact did not clearly lose its way or created such a manifest miscarriage of justice that reversal of the breaking and entering convictions is necessary. We affirm his convictions for breaking and entering (i.e., Count 3 in Case No. 21CR342 (Arrick's Propane) and Count 1 in Case No. 21CR401 (Scioto County Fairgrounds)).

4. Possessing Criminal Tools under R.C. 2923.24(A) and (C) – The Reciprocating Saw

{¶40} Sines-Riley argues that the State has not proven that the reciprocating saw was used in the commission of a felony and that conviction should be reduce to a misdemeanor offense. He argues that the State's theory for this charge is that he used the reciprocating saw to cut catalytic converters off the RVs at the fairgrounds. He argues that because the theft of the catalytic converters was not a felony, then the finding that the saw was used in the commission of a felony offense is not supported by the evidence.

{¶41} To prove possession of criminal tools the State must prove the following elements:

> (A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

*     *     *

> (C) Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.

Thus, possession of criminal tools is a first-degree misdemeanor unless the circumstances indicate that the tool "was intended for use in the commission of a felony."

{¶42} Again, as with breaking and entering, Sines-Riley challenges the "intent" element, arguing that because he did not commit a felony theft at the fairgrounds, then his possession of criminal tools conviction related to the fairground misdemeanor thefts should be reduced to a misdemeanor. However, we reject this argument for the same reason we reject his argument concerning his breaking and entering conviction at the fairgrounds. The criminal statute, R.C. 2923.24, does not require proof of a felony, but rather that the tool was "intended for use in the commission of a felony." Sines-Riley asks us to read more into the statute than is written and he provides no legal authority to support his argument that the State must prove that he not only "intended to use it" to commit a felony, but also did, in fact, commit the felony. Moreover, cutting against Sines-Riley's argument, in a prior version of R.C. 2923.24, a felony conviction for possession of criminal tools was possible where the underlying crime was a misdemeanor. *See State v. Williams*, 89 Ohio App.3d 288, 292 (10th Dist.1993) (citing five cases in which a felony conviction for possession of criminal tools was upheld even though the underlying crime was a misdemeanor).

{¶43} Viewing all of the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence supporting Sines-Riley's felony conviction for possession of criminal tools. Again, Sines-Riley does not make a separate manifest weight of the

evidence argument but raises the same grounds for both the insufficiency and the manifest weight arguments. Upon reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and resolving conflicts in the evidence, we find that the trier of fact did not clearly lose its way or create such a manifest miscarriage of justice that reversal of the possession of criminal tools conviction is necessary. We affirm his conviction for possession of criminal tools (i.e., Count 13 in Case No. 21CR401 (Scioto County Fairgrounds)).

{¶44} We sustain in part and overrule in part Sines-Riley's second assignment of error. We sustain it as it relates to his claim of insufficient evidence for his felony theft convictions under Counts 14 and 15 in Case No. 21CR401 (Dunham and Days fairground thefts). His conviction and sentence for felony theft on those two counts will be reversed and vacated and this cause remanded to the trial court for the purposes of entering a conviction for petty theft and resentencing. We overrule his second assignment of error as it relates to his claim of insufficient evidence and that the verdict is against the manifest weight of the evidence for his convictions of breaking and entering (i.e., Count 3 in Case No. 21CR342 (Arrick's Propane) and Count 1 in Case No. 21CR401 (Scioto County Fairgrounds)) and for his conviction for possessing criminal tools (Count 13 in Case No. 21CR401 (Scioto County Fairgrounds)).

### B. Jury Instructions

{¶45} Sines-Riley contends that the jury should have been given instructions on how to determine the value of the stolen property. He argues, "All the charges alleging felony theft, and the two breaking and enterings that alleged commission of a felony offense required the jury to determine that the value of the stolen property was $1,000 or more." He

concedes that he did not object at trial, but argues it was plain error for the trial court not to give these jury instructions. "An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Cunningham*, 2004-Ohio-7007, ¶ 56.

{¶46} There were three felony theft convictions: Barbara Dunham's catalytic converter at the fairgrounds; Robert Days' catalytic converter at the fairgrounds, and Arrick's Propane's five catalytic converters. We have addressed two of the felony thefts at the fairgrounds and reduced those to misdemeanor charges based on the State's lack of proof of fair market value. The two breaking and entering convictions he challenges are breaking and entering at Arrick's Propane (Count 3 in Case No. 21CR342) and the fairgrounds (Count 1 in Case No. 21CR401).

{¶47} As we set forth in our discussion of Sines-Riley's second assignment of error, theft is a misdemeanor unless the value of the property stolen is $1,000 or more. As the value of the stolen property increases, the felony levels become more serious. Sines-Riley was charged with fifth-degree felony theft, which is theft of property valued at $1,000 or more and less than $7,500. R.C. 2913.61(D) instructs on how to "value" stolen property depending upon the criteria listed. We found that the value of the catalytic converters stolen off the RVs at the fairgrounds were governed by the definition of "value" given in R.C. 2913.61(D)(3) – fair market value. We did not reach a conclusion concerning which definition of "value" governed the Arrick's Propane catalytic converters and noted that at least one court has determined that R.C. 2913.61(D)(2) governs – the cost of replacing the property with new property of like kind and quality.

{¶48} The trial court gave jury instructions on theft from Barbara Dunham, Robert

Days, and Arrick's Propane that tracked the elements of the crime as set forth in the statute,

R.C. 2913.02(A)(1). As for the value, the instruction was:

> If you find the Defendant guilty of * * * Theft, you will then determine beyond a reasonable doubt the specific value of all property obtained by the Defendant involved in that offense. If you do not find the Defendant guilty of theft, you need not determine this matter.
>
> *          *          *
>
> To find a felony theft you must find beyond a reasonable doubt that the value of the property was $1,000.00 or more.

**{¶49}** The trial court did not provide the jury any instructions on how to determine the

value of the stolen property under R.C. 2913.61(D). It should have delivered proper

instructions on valuation under the appropriate subsection of R.C. 2913.61(D). However,

defense counsel did not offer an instruction and did not object to the charge as given.  As for

the two theft counts involving the RV catalytic converters at the fairgrounds, the trial court

should have given the jury instructions that the value is the fair market value and instructed

the jury as to the meaning of "fair market value." Because the State failed to provide any

evidence of the fair market value, we find the trial court's failure to give jury instructions on

value to be prejudicial as to the two fairground felony theft convictions. Had the jury been

instructed that the value was the "fair market value" they would not have found that the value

of the property was $1,000 or more because the State failed to establish any evidence of fair

market value. Even if the jury used the conversation between Parsons, Sines-Riley, and law

enforcement during the traffic stop as evidence of value, it would have found fair market value

of each converter to be not greater than $800, below the felony threshold. *State v. Donaldson*,

1984 WL 7174 (8th Dist. Feb. 2, 1984) (even though no objection was made to an erroneous

jury instruction on value for purposes of felony theft, it must be considered prejudicial to the

right to a fair trial because the State failed to meet its burden of proof for the element of value, "there was absolutely no testimony presented as to fair market value of any of the stolen items"); *State v. Erichsen*, 2012-Ohio-137, ¶ 42, 48 (5th Dist.) (distinguishing *Donaldson* and finding that the court's erroneous instruction on "fair market value" of stolen property instead of "replacement value" was not plain error because the State met its burden and put on testimony of the replacement value of the items stolen); *State v. Powell,* 1986 WL 4670 (8th Dist. April 17, 1986) (distinguishing *Donaldson* and finding that the court's failure to give any particular instruction on "value" under R.C. 2913.61(D) was not plain error because the proper measure of value was "replacement value" under subsection (D)(2) and the witness testified to the replacement value).

{¶50} Although we find prejudicial the failure to instruct the jury properly on the value of the items stolen as to the two fairground thefts at issue, it is moot considering our reversal of those two felony theft convictions and our instructions on remand that the trial court enter convictions for petty theft and resentence him.

{¶51} The felony theft conviction for the Arrick's Propane catalytic converters requires a slightly different analysis. First, as noted previously, the proper determination of value of those items could be either "fair market value" or "replacement value," depending upon whether they fall within the definition in subsection (D)(2) or (D)(3). Because defense counsel did not raise this objection at trial, the State did not have an opportunity to respond, and the trial court did not have an opportunity to consider which definition applied. Where a matter is not raised at the trial court level, we will not determine for the first time on appeal. *State v. Kotouch*, 2022-Ohio-3421, ¶ 21 (7th Dist.). Regardless of which definition is applicable, the trial court erred when it failed to give any instruction on the proper determination of value.

**{¶52}** However, the State presented testimony of the "replacement value" through the testimony of an employee who testified that the "total value or replacement cost" of the five catalytic converters was more than $1,000. Because that is a plausible method to value the items stolen from Arrick's Propane under R.C. 2913.61(D)(2) and defense counsel made no objection to the contrary at trial, we find there was no plain error in the trial court's failure to provide a definition of value for that theft. Similarly, if the jury considered the conversation during the traffic stop as evidence of "fair market value," it would have found the value of the items stolen from Arrick's to be at least $2,000 ($400 x 5 catalytic converters). Again, this is another plausible method to which counsel made no objection. Both valuation methods result in a value calculation greater than the felony threshold level of $1,000. We find no prejudicial error in the failure to give jury instructions on the definition of "value" as it relates to the Arrick's Propane theft.

**{¶53}** Last, Sines-Riley contends that the jury instruction for breaking and entering at Arrick's Propane and the fairgrounds were erroneous because the breaking and entering convictions required the State to prove that he had committed a felony theft. However, we find no merit to this argument. As we discussed in our analysis of his second assignment of error, the State was not required to prove a felony theft actually occurred during the trespass. The statute only requires that the State prove he trespassed "with purpose to commit a felony." R.C. 2911.13(B). *State v. Severns*, 2003-Ohio-2746, ¶ 12-13 (5th Dist.) (conviction for breaking and entering under R.C. 2911.13(B) affirmed where defendant broke into fenced area containing spools of copper wire but was only able to steal a misdemeanor quantity because the spools weighed 300 lbs. each, the trial court's jury instruction on breaking and entering was proper: "Purpose to commit a felony theft offense is an essential element of the

offense of breaking and entering. Only the purpose to commit a felony is necessary and not the actual commission thereof.") The Ohio Jury Instructions for breaking and entering acknowledge this, "Depending on the facts in evidence, the court may need to instruct the jury that only a purpose to commit a theft offense or other felony is necessary, and not the actual commission thereof." 2OJI-CR511.13(A) (Breaking and entering) (August 2022). We reject Sines-Riley's claim of error in the trial court's instruction on breaking and entering.

{¶54} We sustain in part and overrule in part Sines-Riley's first assignment of error. Although we sustain the assignment of error as it relates to the jury instructions on the felony thefts at the fairgrounds, because we vacated those two convictions, the errors are moot. We find that the error in the jury instruction governing the felony theft at Arrick's Propane does not constitute plain error because it did not affect the outcome of the trial. A jury could have found him guilty of felony theft for those items based on the State's evidence. Finally, we find no error in the jury instructions governing breaking and entering.

### C. Merger of Allied Offenses of Similar Import

{¶55} Next Sines-Riley contends that the trial court erred by not merging offenses of breaking and entering, theft, and vandalism. He argues that the trial court should have merged the breaking and entering and theft offenses against Arrick's Propane (Counts 3 and 1, respectively in Case No. 21CR342). He also argues that the trial court should have merged the vandalism and breaking and entering offenses against Arrick's Propane (Counts 2 and 3, respectively in Case No. 21CR342).

{¶56} He also argues that the trial court should have merged "all the breaking and enterings with the accompanying theft offenses in case number 21CR401," which were the crimes at the Scioto County Fairgrounds. He does not specifically identify which breaking

and entering counts he believes have accompanying theft offenses. When we review the offenses for which Sines-Riley was convicted in the fairgrounds case, we find only one breaking and entering offense with an "accompanying" theft offense and that is Counts 7 and 20 involving breaking and entering and petty theft from victim Ryan Caseman. In Count 1, he was convicted of breaking and entering at the fairgrounds, but there is no accompanying charge of theft from the fairgrounds. His theft convictions involving the Dunham and Days catalytic converters do not have any accompanying breaking and entering offenses. He was found not guilty of all other thefts, both petty and felony, at the fairgrounds. For that reason, we limit our merger analysis of Case No. 21CR401 to the breaking and entering and petty theft involving Caseman (Counts 7 and 20 in Case No. 21CR401).

{¶57} We review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25. *State v. Bailey*, 2022-Ohio-4407, ¶ 6, 13. R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶58} "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *State v. Ruff,* 2015-Ohio-995, at paragraph one of the syllabus. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

"Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus. "Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions." *Bailey* at ¶ 11*; State v. Conn*, 2023-Ohio-2669, ¶15-16 (4th Dist.).

### 1. Arrick's Propane Breaking and Entering and Theft

**{¶59}** Sines-Riley argues that breaking and entering and theft at Arrick's Propane should merge. We disagree. Although the victim was the same, the harm from each offense is separate and identifiable. The harm resulting from breaking and entering was the damaged, cut-up chain-linked fence. The harm from the theft was the stolen catalytic converters. This fact distinguishes this case from the one Sines-Riley cites in support of his merger argument, *State v. Ramunas*, 2021-Ohio-3191, ¶ 18 (5th Dist.). "Application of the law governing the merger of allied offenses is dependent on the specific facts of each case." *Bailey*, 2022-Ohio-4407, ¶ 16. In *Ramunas*, a nursing home employee entered the rooms of persons residing there and stole jewelry, credit cards, and personal items. The employee did not cause any separate damage when she trespassed into the rooms. The harm caused in entering the room was the same harm caused by taking items from the rooms. *Id.* at ¶ 19. Here, there was separate harm – the breaking and entering harm was damage to the fence and the theft harm was stolen catalytic converters. The trial court did not err when it did not merge the breaking and entering and theft charges related to Arrick's

Propane.

### 2. Breaking and Entering and Petty Theft from Caseman

**{¶60}** Sines-Riley argues that the breaking and entering and the accompanying theft offense concerning Caseman's property should merge. However, based on the transcript of the sentencing hearing and the judgment entry, it would appear that the trial court has already merged the Caseman petty theft (Count 20) with a breaking and entering offense. However, it appears the trial court merged Caseman's petty theft with the breaking and entering offense associated with another victim, Tim Wheeler (Count 6), rather than the breaking and entering count associated with Ryan Caseman (Count 7). The jury found Sines-Riley not guilty of petty theft from Tim Wheeler (Count 19). Because the Caseman theft was already merged by the trial court, Sines-Riley's merger argument for this offense is moot.

**{¶61}** To the extent Sines-Riley intended some other thefts and breaking and entering offenses merge in this 27-count conviction, he needed to provide a more specific argument. "It is simply not the duty of an appellate court to search the record for evidence, let alone engage in pure speculation, to support an appellant's argument as to any alleged error." *Bush v. Pfeifer*, 2002-Ohio-2187, *7 (4th Dist.); *Hawley v. Ritley*, 35 Ohio St.3d 157 (1988) (explaining that an appellate court may rely upon App.R. 12(A) in disregarding an argument because the appellant failed to adequately brief the argument). We see no need to address this argument further.

### 3. Vandalism and Breaking and Entering at Arrick's Propane

**{¶62}** Sines-Riley contends that the vandalism and the breaking and entering offenses involving Arrick's Propane should merge. He argues that the "only victim was Arrick's [P]ropane, and the harm was damage to their vehicles."

{¶63} Arrick's Propane's employee testified that the fence surrounding their property was cut and damaged and was the method through which Sines-Riley gained access to the storage yard. This was the breaking and entering damage. The other damage presented at trial was the damage to the trucks by the theft of the five catalytic converters. This was the damage caused by theft. There was no testimony concerning separate damage caused by vandalism. The indictment broadly states that Sines-Riley "did knowingly cause physical harm to property that was owned or possessed by Arrick's Propane * * * and the property * * * was necessary in order for its owner * * * to engage in the owner's or possessor's profession, business, trade, or occupation." The State provided a bill of particulars, but inexplicably the bill of particulars contained eight counts (theft, breaking and entering, possessing criminal tools, and five counts of vandalism). The indictment contains only three counts (theft, vandalism, breaking and entering). The bill of particulars did not give any additional particulars on the vandalism offense, but merely restated the verbiage in the indictment. In closing arguments, the State argued that the vandalism was the damage to the trucks. Thus, we find that the damage to the trucks from vandalism was the removal of the catalytic converters.

{¶64} Sines-Riley argued at the sentencing hearing that the Arrick's Propane vandalism offense should merge with the theft offense: "And 342(B) [the Arrick's Propane case number] the theft was impossible to commit in this particular case without the vandalism charge. I mean, that's essentially how the theft was committed." The trial court rejected that argument and found that none of the charges related to the Arrick's Propane merged. Sines-Riley objected. His argument on appeal is the same one he made at trial – the victim, the harm, the conduct, and the motive is the same for the vandalism and theft counts and should

merge. However, in his brief he mistakenly refers to the breaking and entering offense rather than the theft offense. We will address the merits of his argument and disregard the mistaken reference in his brief because his assignment of error broadly challenges the trial court's merger analysis.

{¶65} Based on our de novo review, which affords no deference to a trial court's interpretation, we find that the trial court erred when it did not merge the vandalism count with the theft count. The three separate factors: conduct, animus, and import require that the vandalism offense merge with the theft offense. The conduct was the same: the vandalism offense was the removal of the catalytic converters from the five trucks that Arrick's used in its business and the theft offense was the removal of the catalytic converters from the trucks and stealing them. The animus, which means purpose or immediate motive, was the same – the motive to cut the catalytic converters off the trucks was to be able to steal them. And the import was the same: the same victim, Arrick's Propane, suffered the same harm, removed and stolen catalytic converters from trucks used in its business.

{¶66} We sustain in part and overrule in part Sines-Riley's third assignment of error. The vandalism and theft offenses merge. The sentences on those two counts are vacated (Counts 1 and 2 in Case No. 21CR342) and we remand for a new sentencing hearing.

> The foregoing remedy comports with the requirements of R.C. 2941.25, as well as the felony-sentencing statutes. Pursuant to R.C. 2953.08(G)(2), an appellate court may vacate a sentence and remand for a new sentencing hearing if the sentence is contrary to law. A sentence that contains an allied-offenses error is contrary to law. R.C. 2953.08(A)(4). * * *.

> A remand for a new sentencing hearing generally anticipates a de novo sentencing hearing. However, a number of discretionary and mandatory limitations may apply to narrow the scope of a particular resentencing hearing. For example, the parties may stipulate to the sentencing court's considering the record as it stood at the first sentencing hearing. In a remand based only on an allied-offenses sentencing error, the guilty verdicts underlying a

defendant's sentences remain the law of the case and are not subject to review. Further, only the sentences for the offenses that were affected by the appealed error are reviewed de novo; the sentences for any offenses that were not affected by the appealed error are not vacated and are not subject to review. (Citations omitted)

*State v. Wilson*, 2011-Ohio-2669, ¶ 14-15.

### D. Sentencing Errors

**{¶67}** Sines-Riley's remaining three assignments of error concern purported errors in the trial court's sentencing. However, we vacate his two felony theft convictions related to Dunham and Days catalytic converters at the fairgrounds and are remanding the matter for the trial court to enter a conviction for petty theft on those two counts and resentencing. Additionally, we merged his theft and vandalism offenses for the offenses involving Arrick's Propane (Counts 1 and 2 in Case No. 21CR342) and vacate those sentences and remand for resentencing. Therefore, we anticipate a de novo sentencing hearing. *Wilson* at ¶ 15. Thus, Sines-Riley's assignments of error related to purported sentencing errors are rendered moot: The fourth assignment of error concerning consecutive prison terms and the sixth assignment of error concerning compliance with certain sentencing notice requirements. *State v. Robinson,* 2019-Ohio-2155, ¶ 38 (4th Dist.); App.R. 12.

**{¶68}** However, Sines-Riley's fifth assignment of error challenges the constitutionality of the Reagan Tokes Law, which is not rendered moot by our determinations.

### 1. Reagan Tokes Law

**{¶69}** Sines-Riley contends that the trial court erred by sentencing him under the Reagan Tokes Law because it is unconstitutional. He argues that it violates the separation of powers doctrine and due process. He did not challenge the constitutionality of the Reagan Tokes Law at the trial level and has therefore forfeited all but plain error review. *State v.*

*Alexander*, 2022-Ohio-1812, ¶ 52 (4th Dist.).

**{¶70}** Sines-Riley's brief was filed in April 2023. Since then, in July 2023, the Supreme Court of Ohio has addressed these arguments and held that the Reagan Tokes Law does not violate the separation of powers doctrine, does not violate the right to a jury trial, is not void for vagueness, and does not violate a defendant's procedural due process rights. *State v. Hacker*, 2023-Ohio-2535.

**{¶71}** We overrule Sines-Riley's fifth assignment of error.

## IV. CONCLUSION

**{¶72}** We sustain in part Sines-Riley's first and second assignments of error and vacate his two felony theft convictions (Counts 14 and 15 in Case No. 21CR401). We overrule the remaining arguments in his first and second assignment of errors. We sustain in part his third assignment of error and find that the vandalism and theft offenses related to Arrick's Propane merge for purposes of sentencing. We vacate those sentences. We overrule the remaining arguments in his third assignment of error. We overrule his fifth assignment of error. We overrule as moot his fourth and sixth assignments of error. We remand this case to the trial court for the purposes of holding a de novo sentencing hearing, entering a conviction for petty theft on Counts 14 and 15 in Case No. 21CR401, and for resentencing on those convictions and on the merged offenses of vandalism and theft, Counts 1 and 2 in Case No. 21CR342.

JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.
CAUSE REMANDED FOR NEW SENTENCING.

JUDGMENT ENTRY

It is ordered that the JUDGMENT BE REVERSED IN PART AND AFFIRMED IN PART. CAUSE REMANDED. Appellee and appellant to split equally the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY:_____
       Michael D. Hess, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**