[Cite as *State v. Hopkins*, 2025-Ohio-2102.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-07-051 |
| | : | O P I N I O N |
| - vs - | | 6/16/2025 |
| | : | |
| TIMOTHY HOPKINS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CR040695

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Jackson Lewis P.C., and Paul V. Kelly and Keith Taubenblatt, for appellant.

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Timothy Hopkins, appeals his convictions in the Warren County Court of Common Pleas for possession of drugs and criminal tools. Although he acknowledges possessing the relevant substances, Hopkins argues that his actions were permissible because he was a licensed pharmacist who was merely "engaged in the practice of pharmacy." As both a pharmacist and an amputee, Hopkins claims he was

legally permitted to possess and compound the substances for self-experimentation and to manage his chronic pain.

**Arrest and Initial Investigation**

**{¶ 2}** As relevant here, Hopkins was subject to a civil protection order ("CPO") arising from a longstanding dispute with his neighbor. On the afternoon of Friday, May 14, 2021, Hopkins was arrested for violating the CPO. While detained over the weekend, he made a monitored and recorded phone call to his wife, during which he expressed a desire to move away from the neighbor. He also mentioned the need to stock up on marijuana before dismantling his grow operation. During the call, Hopkins and his wife discussed harvesting plants, the use of multiple grow tents, and the involvement of others in maintaining the plants during his incarceration.

**{¶ 3}** After learning about the call, the Mason Municipal Court prosecutor contacted Detective Dan Schweitzer from the Warren County Drug Task Force. Once he received the call, Detective Schweitzer prepared an affidavit for a search warrant, which was subsequently approved by a Warren County judge.

**Search and Discovery**

**{¶ 4}** On May 19, 2021, Detective Schweitzer and Special Agent Ray Dratt approached Hopkins while he was meeting with his probation officer at the probation department. They presented him with a copy of the search warrant and asked if he would be willing to show them around his residence. Hopkins agreed. Once inside Detective Schweitzer's vehicle, Hopkins immediately began discussing his marijuana grow operation. Hopkins described the cultivation of marijuana as a personal hobby and explained that he did not want to spend $4,000 a month for dispensary marijuana. Detective Schweitzer testified that while Hopkins did present a medical marijuana card, he did not mention his status as a pharmacist or make any reference to pharmaceutical

research.

**{¶ 5}** At his residence, Hopkins led Detective Schweitzer through the home and into the basement, where the grow operation was located behind a keypad-secured door. Inside, officers discovered multiple grow tents and marijuana plants. Hopkins also told Detective Schweitzer that he had steroids and directed him to a cabinet where they were stored.

**Original Indictment**

**{¶ 6}** On September 27, 2021, Hopkins was indicted in Case No. 21CR38512 on nine counts: (1) illegal cultivation of marijuana, (2) possession of marijuana, (3) possession of oxymetholone, (4) possession of testosterone cypionate, (5) possession of testosterone enanthate, (6) possession of oxandrolone, (7) possession of dromostanolone propionate, (8) possession of criminal tools, and (9) possession of trenbolone acetate.[1]

**{¶ 7}** Hopkins was arraigned on October 8, 2021. Throughout the case, Hopkins filed multiple tolling motions. On March 2, 2022, he filed a time waiver, waiving his right to a speedy trial.

**{¶ 8}** On October 11, 2022, the Ohio Supreme Court issued its decision in *State v. Troisi*, 2022-Ohio-3582, dismissing without prejudice an indictment against licensed wholesale drug distributors accused of drug trafficking, on the grounds that the indictment failed to adequately state the nature and cause of the accusation. *Id.* at ¶ 1, 44. The following day, Hopkins filed a motion arguing that, pursuant to *Troisi*, his indictment should also be dismissed.

**{¶ 9}** On October 13, 2022, the trial court sent an email to the parties indicating

---

1. We refer to the substances in Counts 3 through 7 and Count 9 as "steroids."

- 3 -

that it agreed with Hopkins:

> Counsel:
>
> I have had the opportunity to review the Defendant's Motion to Dismiss and the *Troisi* decision cited therein. I find the reasoning of *Troisi* to be applicable and virtually indistinguishable from the Hopkins case. If Mr. Hopkins is a licensed pharmacist, it is incumbent upon the State of Ohio to allege, in the indictment, that neither of the two statutory exceptions apply . . . .
>
> It is my position that, at this point in the case, the Defendant is not on sufficient notice as to how he is alleged to have failed to act in accordance with Chapter 3719 (Controlled Substances); Chapter 4729 (Pharmacists) or Chapter 3796 (Medical Marijuana). As a result, the indictment is defective.
>
> . . .
>
> *Troisi* also makes clear that a dismissal would be without prejudice. I would like to talk on Monday about the best way to remedy the problem. I am not sure I have completely thought through whether an amended indictment, a superseding indictment, or a revised bill of particulars would cure this problem. The Supreme Court seemed to suggest that these were all viable options - but, none of them were explored in that case.
>
> I will be issuing a written decision that continues the trial and removes both Defendants from pretrial supervision.
>
> We will talk on Monday in greater detail. Have a nice weekend.

{¶ 10} On October 17, 2022, the trial court held a Zoom hearing. The parties and the trial court had the following exchange:

> [Assistant prosecutor]: Well, Judge, I've had a chance to kind of read over the Troisi case. I guess the question now is, I pose to the Court, is - - I don't know if you've had a chance to look at it more and think through to see if we are of the opinion that - - more particular, Bill of Particulars is sufficient to correct the notice issue.
>
> THE COURT: Well, I think part of the argument being advanced by [counsel] is that . . . [those] were not matters that were raised to the Grand Jury. I don't think anything that we

- 4 -

do now solves that problem and it would seem to me that either [a] new indictment or a superseding indictment is the only way to fix that, but that's not my call. I mean this seems like the case that you read about in the Supreme Court and you think to yourself my god, why didn't they just do this tiny little thing that would've fixed this big problem and saved years and years of litigation. That seems like the situation that we're in right now.

[Assistant prosecutor]: And, I think we are in the position that we will be presenting a new indictment to the Grand Jury.

THE COURT: All right. Mr. Paul Kelly, anything from Mr. Hopkins?

[Hopkins counsel]: No, Your Honor, only that I agree with what the Court issued on Friday afternoon and the comments of the Court just now. I don't think this can be cured by amendment or by a Bill of Particulars and I believe a new indictment is required.

The parties and the trial court then discussed the procedural implications depending on

whether the state pursued a superseding indictment or a new indictment:

THE COURT: All right. So I will issue an order setting this for a status conference and Mr. Hopkins . . . [is] . . . under no pre-trial reporting requirements. That was already in my order and if it's a superseding indictment, it will take place in the same case. If it's a new indictment then I would anticipate that we have to do an arraignment and get started anew. . . .

. . .

[Hopkins counsel]: And, Your Honor will it be a formal entry of dismissal of the current indictment?

THE COURT: Not yet. I'm not dismissing my case yet. I'm setting it for a status conference in thirty days. If there is a new indictment then we would just nolle the old case and then we would proceed in the new - - get a new case number. . . .

An entry and order filed the same day stated:

The State of Ohio has advised the Court that it will be seeking either a new indictment or a superseding indictment before proceeding any further in the case.

It is hereby **ORDERED** that the matter be set for [a] Status

- 5 -

Conference on November 21, 2022 at 11:30 a.m. Any party or attorney may appear remotely if they wish.

{¶ 11} The status conference did not take place because on November 16, 2022, the State emailed the trial court and Hopkins' counsel, indicating it was dismissing the indictment without prejudice:

Counsel,

At this time, the State of Ohio is dismissing the pending indictment[ ] without prejudice.

The State of Ohio intends to represent the case[ ] to a grand jury in the near future.

I have attached a copy of the Nolle . . . which will be filed with the Court today.

The trial court signed the nolle prosequi and entered it on the record the same day.[2] The nolle prosequi stated that the dismissal was granted "for good cause shown, and with leave of court."

**Reindictment and Relevant Pretrial Motions**

{¶ 12} On June 6, 2023, Hopkins was reindicted in Case No. 23CR40695 on the same nine counts. The new indictment included "furthermore" clauses that specified violations of law to comport with the *Troisi* decision. For example,

**Count Three – Possession of Drugs F3**

*The Grand Jurors do further find and present:*

Timothy Hopkins . . . did knowingly obtain, possess, or use a controlled substance or a controlled substance analog and the drug involved in the violation is a compound, mixture, preparation, or substance included in Schedule III, IV, or V, to wit: oxymetholone, a Schedule III drug . . . in violation of Ohio Revised Code §2925.11(A), 2925.11(C)(2)(c), **Possession of Drugs**, a felony of the third degree.

---

2. Despite the prior communications, Hopkins claims to have been blindsided by the nolle prosequi, stating that "[n]o notice was provided to the Appellant, no input was solicited therefrom, no good cause was established, and no hearing or conference was held."

FURTHERMORE, the defendant was a pharmacist not acting in accordance with Ohio Revised Code §3719.09(A) in that defendant's possession of drugs was not in the course of business as defined in Ohio Revised Code § 3719.09(D).

FURTHERMORE, the defendant was a pharmacist not acting in accordance with Ohio Revised Code §4729.54 in that defendant's possession of drugs did not occur at an establishment described in a terminal distributor license issued under Ohio Revised Code §4729.54 from the Board of Pharmacy.

FURTHERMORE, the defendant was not a person conducting or participating in a research project approved by the United States Food and Drug Administration.

{¶ 13} On August 15, 2023, Hopkins filed two motions: one to dismiss the charges based on a violation of his right to a speedy trial, and another to suppress evidence obtained during the search of his home. The trial court denied both motions in a written decision. Hopkins filed an interlocutory appeal, which this court dismissed on January 3, 2024, because it was not a final appealable order. Hopkins also continued filing motions, which tolled the speedy trial time.

**Trial and Verdict**

{¶ 14} The jury trial commenced on April 15, 2024. The State presented testimony from professionals with the Ohio Board of Pharmacy, the Ohio Division of Cannabis Control, the Drug Enforcement Agency, and the Miami Valley Regional Crime Laboratory, as well as multiple law enforcement officers. The State introduced evidence demonstrating that Hopkins' central claim—that his status as a pharmacist allowed him to possess and self-experiment with controlled substances—was not supported by the laws governing pharmacists, controlled substances, or medical marijuana.

{¶ 15} Hopkins did not dispute that he had a marijuana grow operation or that he possessed steroids; rather, he asserted that his actions were permissible. He testified on

his own behalf about the research he was purportedly conducting. In support of his defense, he also called a retired pharmacist as a witness who testified on various topics, including the historical context of pharmaceutical research, the concept of "one person studies," and the practice of self-experimentation within the field of pharmacy.

{¶ 16} Following deliberations, the jury found Hopkins guilty on Counts 3 through 9, which included charges related to the possession of steroids and possession of criminal tools. However, the jury was unable to reach a verdict on Counts 1 and 2, which concerned the possession and cultivation of marijuana.[3]

## Post-Trial Motion and Sentence

{¶ 17} On April 30, 2024, Hopkins filed a post-trial motion for judgment of acquittal, which the trial court denied. He was subsequently sentenced to community control, with a condition that he serve 60 days in jail. Hopkins timely appealed, raising three assignments of error for review.

## Speedy Trial

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT ERRED BY DENYING HOPKINS' MOTION TO DISMISS THE INDICTMENT ON SPEEDY TRIAL GROUNDS.

{¶ 20} In his first assignment of error, Hopkins argues that his right to a speedy trial was violated. "A criminal defendant has a right to a speedy trial under the Ohio Revised Code, the Ohio Constitution, and the Fifth and Sixth Amendments to the United States Constitution." *State v. Adams*, 2015-Ohio-3954, ¶ 80. This right is codified in R.C. 2945.71, which mandates that the State bring a defendant charged with a felony to trial within 270 days of their arrest. R.C. 2945.71(C)(2).

---

3. Count 3 was a third-degree felony for drug possession and Count 8 was a fifth-degree felony for possessing criminal tools. The other convictions were first-degree misdemeanors.

**{¶ 21}** The calculation of speedy trial time may be affected either by a defendant's waiver or by statutory tolling. These two distinct concepts determine how a court must count days when assessing a potential speedy trial violation. *State v. Blackburn*, 2008-Ohio-1823, ¶ 16; *State v. Nelson*, 2024-Ohio-5750, ¶ 47 (12th Dist.); *State v. Sheets*, 2025-Ohio-355, ¶ 13 (10th Dist.). A waiver relinquishes the right to a speedy trial, whereas tolling occurs by operation of the statute. *Nelson* at ¶ 48-49. R.C. 2945.72 lists the events and circumstances that extend the time within which a defendant must be brought to trial. *State v. Ramey*, 2012-Ohio-2904, ¶ 24.

### Nolle Prosequi

**{¶ 22}** As relevant here, when charges are dismissed, the time between the dismissal and a subsequent indictment on the same conduct does not count toward the speedy trial deadline. *State v. Myers*, 2002-Ohio-6658, ¶ 36. Hopkins, however, argues that the time continued to run in this case because the nolle prosequi did not comply with R.C. 2941.33 and Crim.R. 48(A), because it was not made in open court or for good cause. Since he claims the nolle prosequi was invalid, Hopkins argues the speedy trial time has been running continuously and that more than 270 days had elapsed.[4]

**{¶ 23}** Crim.R. 48(A) provides that the State, by leave of court and in open court, may file an entry of dismissal to terminate the prosecution. Similarly, R.C. 2941.33 allows the prosecuting attorney to enter a nolle prosequi with leave of court on good cause shown and in open court.

**{¶ 24}** In this case, Hopkins moved to dismiss the indictment based on the *Troisi* decision. During a hearing, Hopkins argued that the indictment was deficient and that a

---

4. However, Hopkins fails to adequately explain why the time waiver he executed in Case No. 21CR38512 would not remain effective even if the nolle prosequi were deemed invalid. This provides an additional basis for concluding that any alleged error related to the nolle prosequi was harmless. *See* Crim.R. 52(A). Due to the waiver, no speedy trial time would have accrued from the date of its execution on March 2, 2022, through at least the time of his reindictment in Case No. 23CR40695.

new indictment was required. The trial court agreed. The parties and the court discussed procedural issues, and the court scheduled a status conference. However, on November 16, 2022, the State emailed the trial court and Hopkins' counsel expressing its intent to dismiss the indictment without prejudice and thus pursue a reindictment. The assistant prosecutor attached a copy of a nolle prosequi and indicated it was being filed that day. The record reflects that the trial court signed and entered the nolle prosequi on the record that same day.

{¶ 25} Upon review, we conclude that the nolle prosequi was valid. Consequently, the period between the dismissal and the subsequent indictment does not count toward the speedy trial deadline. In this case, "good cause" existed to pursue a new indictment in compliance with the Ohio Supreme Court's ruling in *Troisi*. *See State ex rel. Steele v. McClelland*, 2018-Ohio-4011, ¶ 6 (recognizing that a second indictment altering charges constitutes "good cause" under R.C. 2941.33), citing *State v. McWilliams*, 1995 Ohio App. LEXIS 2774 (8th Dist. June 29, 1995) (finding good cause for dismissal when a second indictment is being sought). The record reflects extensive discussion on this issue, leaving no ambiguity as to the "good cause" for dismissal.

{¶ 26} As to the "open court" requirement, Ohio courts generally interpret this as meaning that court is in session with the judge present on the bench. *State v. Pendleton*, 2011-Ohio-2024, ¶ 39 (5th Dist.); *State v. Lenard*, 2013-Ohio-1995, ¶ 13 (8th Dist.). However, a hearing held in chambers may also satisfy the open court requirement. *State v. Ramos*, 2022-Ohio-886, ¶ 38 (3d Dist.), citing *State v. Sutton*, 64 Ohio App.2d 105, 107 (9th Dist.1979).

{¶ 27} Given the circumstances of this case, we find the "open court" requirement was met. Although Hopkins claims he had "no notice" of the nolle prosequi and that it was not filed in open court, he overlooks the extensive on-the-record discussions. During the

October 17 hearing, Hopkins' counsel argued dismissal was necessary under *Troisi* and agreed that a new indictment was required. The trial court agreed with Hopkins, discussed the need for a new indictment, and stated "we would just nolle the old case" once a new indictment was obtained. While the State did not explicitly announce the dismissal of the case at that hearing, it informed the court "we will be presenting a new indictment to the Grand Jury." These discussions, already detailed above, clearly demonstrate that the "open court" requirement was met.

{¶ 28} However, even if the subsequent filing of the nolle prosequi was not strictly entered in open court, Hopkins has not shown any resulting prejudice. *See Pendleton* at ¶ 40; *State v. Brown*, 2016-Ohio-553, ¶ 8-11 (4th Dist.); *State v. Lenard*, 2013-Ohio-1995, ¶ 16-19 (8th Dist.). As observed in *Pendleton*, Crim.R. 48(A) and related statutes were enacted to limit prosecutorial discretion by requiring judicial involvement. *Id.* at ¶ 40. Such involvement was present here, as the trial court was actively engaged in discussions regarding *Troisi* and the need for a new indictment. The trial court proactively addressed future proceedings depending on whether the State pursued a superseding indictment or a new indictment. Accordingly, Hopkins has not demonstrated any prejudice, and any procedural error would be, at most, harmless. *See* Crim.R. 52(A). Notably, dismissal of the indictment was the very relief Hopkins sought in his motion. Accordingly, we find Hopkins' arguments with respect to the nolle prosequi and the continued running of the speedy trial clock are without merit.

**Remaining Arguments**

{¶ 29} Following his argument concerning the nolle prosequi, Hopkins presents an argument that fails to address numerous tolling events that occurred in both Case No. 21CR38512 and Case No. 23CR40695. Rather than analyzing the effect of those tolling motions on the speedy trial timeline, he relies on conclusory and generalized assertions.

For example, he states:

> The docket in the 21CR case confirms that Hopkins was arraigned on the original charges on October 8, 2021. This is when the speedy trial clock started because his charge had begun pending. Even when certain time periods during the 21CR Case proceeding are excluded (due to the pendency of motions, etc.), there was a lapse of over 270 days between when Hopkins filed his motion to dismiss for violation of his right to a speedy trial (August 15, 2023).

Hopkins provides no specific analysis regarding the multiple tolling motions filed in both cases.

**{¶ 30}** As we have consistently held, it is the appellant's burden to demonstrate error on appeal by presenting an argument supported by citations to legal authority and facts in the record. *See* App.R. 16(A)(7). An appellate court may disregard any assignment of error that fails to identify the relevant portions of the record from which the errors are based. *See* App.R. 12(A)(2). It is not this court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *State v. Phipps*, 2024-Ohio-4832, ¶ 13 (12th Dist.).

**{¶ 31}** By simply ignoring the multiple tolling events and offering only a bare conclusion that his speedy trial rights were violated, Hopkins has failed to meet his burden under App.R. 16. Accordingly, we conclude that Hopkins was not denied his right to a speedy trial, and his first assignment of error is without merit.

Suppression of Evidence

**{¶ 32}** Assignment of Error No. 2:

**{¶ 33}** THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS EVIDENCE SEIZED PURSUANT TO AN ILLEGAL SEARCH OF HOPKINS' HOME.

**{¶ 34}** In his second assignment of error, Hopkins argues that the trial court erred by denying his motion to suppress evidence. He claims that the search of his residence

was a direct consequence of an illegal arrest and therefore the evidence obtained should be suppressed as "fruit of the poisonous tree."

{¶ 35} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Owensby*, 2022-Ohio-1702, ¶ 15 (12th Dist.). The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Casey*, 2014-Ohio-2586, ¶ 16 (12th Dist.). Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Lynn*, 2018-Ohio-3335, ¶ 15 (12th Dist.). "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 2007-Ohio-3353, ¶ 12 (12th Dist.).

{¶ 36} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures." *State v. Stout*, 2021-Ohio-1125, ¶ 12 (12th Dist.). Generally, evidence obtained as a result of an illegal search or an illegal search warrant will be excluded. *State v. Dubose*, 2008-Ohio-5933, ¶ 11-12 (12th Dist.). The exclusionary rule, while not an express mandate found in the Fourth Amendment, is inherent in its protective language and "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *State v. Quinn*, 2012-Ohio-3123, ¶ 12 (12th Dist.).

{¶ 37} On appeal, Hopkins argues that the evidence obtained as a result of the search warrant should have been suppressed because his initial arrest and detention were unlawful. He cites the subsequent decision of the Mason Municipal Court dismissing

the violation of the CPO charge without prejudice as supporting this proposition. He further argues that the arresting officer improperly delayed execution of the arrest warrant until late on a Friday to ensure his weekend detention in the jail facility. He also raises other claims of prosecutorial and law enforcement misconduct arguing, for instance, that Detective Schweitzer omitted that he (Hopkins) was a licensed pharmacist in his application for the search warrant.

{¶ 38} Following review, we find these arguments unpersuasive. Although he challenges the legality of his arrest and subsequent detention, Hopkins fails to present a persuasive legal basis for this claim. The fact that the charge for violating the CPO was later dismissed without prejudice does not undermine the existence of probable cause at the time of arrest. *See State v. Haines*, 2003-Ohio-6103, ¶ 10 (12th Dist.) (explaining that the determination of probable cause is based on the totality of the facts and circumstances). Rather, our review of the record confirms that the trial court properly rejected Hopkins' allegation of a coordinated effort between the prosecutor and law enforcement officers to ensure his weekend detention. In short, the record shows that Hopkins was arrested for violating a CPO and thereafter made a highly incriminating phone call concerning his marijuana grow operation, which in turn led to the issuance of a valid search warrant for his residence.

{¶ 39} Moreover, exclusion of the evidence in this case is unwarranted because the evidence obtained from the search of Hopkins' residence did not result from the arrest itself, but from his own voluntary jailhouse communication. *See State v. Kolle*, 2022-Ohio-2459 (12th Dist.). In *Kolle*, a sheriff's deputy responded to a disturbance at an apartment complex and, upon learning that the individuals involved were inside, entered the apartment with permission. *Id.* at ¶ 2. The deputy conducted warrant checks and arrested the defendant upon discovering an outstanding warrant. *Id.* While in jail, the defendant

made several phone calls related to drug trafficking, which led to new charges. *Id*. On appeal, the defendant argued that the deputy's initial entry into the apartment was improper and therefore the evidence obtained from his phone calls should have been suppressed. *Id*. at ¶ 30-34. This court upheld the denial of the motion to suppress, concluding that the drug trafficking charges were not the product of the initial arrest or apartment entry, but instead arose from the defendant's own jailhouse communications. *Id*. at ¶ 34.

{¶ 40} Similarly, in the present case, the evidence obtained from the search of Hopkins' residence was not the result of his arrest for violating the CPO. Rather, while incarcerated, Hopkins made a monitored phone call to his wife during which he discussed harvesting marijuana plants, the presence of multiple grow tents, and the involvement of other individuals. Detective Schweitzer reviewed this call and subsequently obtained a search warrant for Hopkins' residence resulting in the discovery of the relevant substances. As in *Kolle*, we find that the trial court properly denied the motion to suppress. The evidence was not the fruit of an unlawful arrest but rather was the result of Hopkins' own voluntary conduct. Accordingly, we find that Hopkins' second assignment of error is without merit.

<u>Sufficiency of Evidence</u>

{¶ 41} Assignment of Error No. 3:

{¶ 42} THE TRIAL COURT ERRED BY DENYING HOPKINS' POST TRIAL MOTION FOR JUDGMENT OF ACQUITTAL.

{¶ 43} In his third assignment of error, Hopkins contends the trial court erred by denying his Crim.R. 29 motion for acquittal. Crim.R. 29(A) provides that a trial court may order a judgment of acquittal if the evidence is insufficient to sustain a conviction. An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as

that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 2008-Ohio-4163, ¶ 5 (12th Dist.).

{¶ 44} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Billingsley*, 2020-Ohio-2673, ¶ 14 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). "Therefore, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Billingsley* at ¶ 14, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

### Possession of Drugs

{¶ 45} Hopkins was convicted of violating R.C. 2925.11(A), which prohibits any person from knowingly obtaining, possessing, or using a controlled substance. Hopkins did not deny that he possessed the substances in question. However, he argued that the statute did not apply to him because he was a licensed pharmacist.

{¶ 46} The State acknowledged Hopkins' status as a pharmacist. As a result, the new indictment included additional "furthermore" clauses to clarify that his conduct fell outside the legal protections afforded to pharmacists:

> FURTHERMORE, the defendant was a pharmacist not acting in accordance with Ohio Revised Code §3719.09(A) in that defendant's possession of drugs was not in the course of business as defined in Ohio Revised Code § 3719.09(D).
>
> FURTHERMORE, the defendant was a pharmacist not acting in accordance with Ohio Revised Code §4729.54 in that defendant's possession of drugs did not occur at an establishment described in a terminal distributor license

issued under Ohio Revised Code §4729.54 from the Board of Pharmacy.

FURTHERMORE, the defendant was not a person conducting or participating in a research project approved by the United States Food and Drug Administration

{¶ 47} At trial, the State introduced evidence demonstrating that Hopkins was not acting in compliance with R.C. 3719.09(A), as his drug possession did not occur "in the course of business" as defined by R.C. 3719.09(D). Hopkins admitted to possessing steroids for his personal use and did not show that he had a valid prescription. He further acknowledged that he failed to document the distribution of these substances in the Ohio Automated Rx Reporting System ("OARRS"). The State also presented evidence that Hopkins possessed Schedule I and Schedule III controlled substances at his residence without a terminal distributor license, DEA registration, or FDA approval.

{¶ 48} On appeal, Hopkins asserts that his possession and use of the substances was permissible, claiming he was engaged in self-experimentation to address chronic health conditions. However, when the evidence is viewed in the light most favorable to the prosecution, the trial record supports the jury's verdict. The case ultimately turned on witness credibility. Although Hopkins argues otherwise, the jury could reasonably have found that his research claims were contrived to avoid criminal responsibility. The State presented sufficient evidence to establish each essential element of the offenses, including that Hopkins was not acting within the lawful scope of his professional capacity as a pharmacist. Accordingly, finding no merit in any of Hopkins' arguments, we conclude that his convictions on Counts 3 through 7 and Count 9, relating to the possession of steroids, are supported by sufficient evidence.

**Possession of Criminal Tools**

{¶ 49} Hopkins was also convicted of one count of possession of criminal tools in

violation of R.C. 2923.24(A). Under this statute:

> (A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
>
> . . .
>
> (C) Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.

Thus, possession of criminal tools is generally a misdemeanor unless the evidence shows the tool was intended for use in committing a felony.

{¶ 50} On appeal, Hopkins challenges the sufficiency of the evidence supporting his conviction for possession of criminal tools, specifically with respect to the digital scale. He argues that the State introduced the scale solely in connection with the marijuana cultivation charge, and since the jury was unable to reach a verdict on that count, the conviction for possession of criminal tools lacks evidentiary support. This argument, however, reflects a misinterpretation of the applicable law. Pursuant to R.C. 2923.24(C), a conviction for possessing criminal tools does not require a conviction on the underlying felony—only that the tool was intended for use in the commission of a felony. *See State v. Sines-Riley*, 2024-Ohio-2860, ¶ 42 (4th Dist.). Contrary to his argument otherwise, the jury did not have to find him guilty of cultivation or possession of marijuana to find him guilty of possessing criminal tools.

{¶ 51} Furthermore, as the trial court correctly observed, the State introduced additional evidence that Hopkins possessed glass vials and powder, which a rational trier of fact could reasonably determine to be criminal tools. We also agree that a reasonable juror could conclude that the digital scale was used to weigh the steroids referenced in

Count 3, which, as noted above, was also a felony charge. Accordingly, the record contains sufficient evidence to support the conviction for possession of criminal tools (Count 8). Hopkins' third assignment of error is overruled.

{¶ 52} Judgment affirmed.

PIPER and SIEBERT, JJ. concur.